IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NELSON GAITAN-AYALA, | ) | CIV. NO. 12-00002 JMS-BMK |
| | ) | CR NO. 07-00268-01 JMS |
| Petitioner, | ) | |
| | ) | ORDER: (1) DENYING |
| vs. | ) | PETITIONER'S MOTION UNDER |
| | ) | 28 U.S.C. § 2255 TO VACATE, SET |
| UNITED STATES OF AMERICA, | ) | ASIDE, OR CORRECT SENTENCE |
| | ) | BY A PERSON IN A FEDERAL |
| Respondent. | ) | CUSTODY; AND (2) DENYING A |
| | ) | CERTIFICATE OF |
| _____ | ) | APPEALABILITY |

## ORDER: (1) DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN A FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY

## I. INTRODUCTION

Currently before the court is Petitioner Nelson Gaitan-Ayala's

("Gaitan-Ayala") Petition Pursuant to 28 U.S.C. § 2255 to Vacate Sentence and Set

Aside for a New Sentencing ("§ 2255 Motion").  Doc. Nos. 731, 738.  Gaitan-

Ayala challenges his sentence on various grounds, including ineffective assistance

of counsel.

The government filed an Opposition on May 29, 2012, Doc. No. 740,

and Gaitan-Ayala filed a Reply on July 30, 2012.  Doc. No. 747.  On March 11,

2013, an evidentiary hearing was held regarding Gaitan-Ayala's claims that his

counsel, Eric Seitz, provided ineffective assistance of counsel regarding plea

negotiations and in failing to discuss the amount of time Gaitan-Ayala faced if he

proceeded to trial and received a guilty verdict.  For the following reasons, the

court DENIES Gaitan-Ayala's § 2255 Motion and DENIES a certificate of

appealability.

## II.  BACKGROUND

On May 31, 2007, a grand jury in the District of Hawaii returned a 10-

count Indictment charging Gaitan-Ayala, John Eduardo Ayala, Hector Cruz,

Wilsonis Ayala, Raychel Cabral, Roxanne Bates, and Ryan Ikeda with conspiracy

to possess with intent to distribute and to distribute 50 grams or more of

methamphetamine and related offenses.

On August 23, 2007, the same grand jury returned a 14-count First

Superceding Indictment ("FSI"), which added Defendants Jose Abelardo Ayala,

Jerry Arreola, and Brandon Saragosa, and charged Defendants with conspiracy

with intent to distribute and to distribute 500 grams or more of methamphetamine

and related offenses.  The FSI charged Gaitan-Ayala with five counts, including:

(1) conspiring to possess with intent to distribute and to distribute 500 grams or

more of a substance containing a detectable amount of methamphetamine in

violation of 21 U.S.C. § 846 (Count 1); (2) distributing 50 grams or more of

methamphetamine on November 16, 2006 in violation of 21 U.S.C. §§ 841(a)(1)

and (b)(1)(A) (Count 6); (3) distributing 50 grams or more of methamphetamine on

March 23, 2007 in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count 7);

(4) using a communication facility in causing and facilitating the commission of a

conspiracy to possess with intent to distribute and to distribute methamphetamine

on December 13, 2006 in violation of 21 U.S.C. § 843(b) (Count 11); and

(5) using a communication facility in causing and facilitating the commission of a

conspiracy to possess with intent to distribute and to distribute methamphetamine

on December 17, 2006 in violation of 21 U.S.C. § 843(b) (Count 12).

Trial commenced against Gaitan-Ayala on October 7, 2008 and after

five days of testimony, the jury returned a verdict against Gaitan-Ayala on all

Counts of the FSI on October 17, 2008.[1]

After the trial, the government filed three "Notices of Newly

Discovered *Giglio* Material," and in response, Gaitan-Ayala filed a Motion for

New Trial.  On April 2, 2009, the court granted the Motion for New Trial as to

Counts 6, 11, and 12 of the FSI.  *See United States v. Gaitan-Ayala*, 2009 WL

901522 (D. Haw. Apr. 2, 2009).  The government chose not to retry Gaitan-Ayala

---

[1]  The court previously described the evidence presented at trial in its April 2, 2009 Order
Granting in Part and Denying in Part Defendant Nelson Gaitan-Ayala's Motion for a New Trial.
*See United States v. Gaitan-Ayala*, 2009 WL 901522 (D. Haw. Apr. 2, 2009).  The court does
not repeat it here.

on these counts, and on June 15, 2009, the court sentenced Gaitan-Ayala on Counts 1 and 7 to 264 months in prison, five years supervised release, and a $100 special assessment.

Gaitan-Ayala subsequently appealed, arguing that the court erred in sustaining the conviction on Counts 1 and 7, and that other alleged errors (*i.e.*, his pretrial confinement in Honolulu Federal Detention Center's Special Housing Unit ("SHU"), the admission of gun photographs at trial, the prosecution's leading questions at trial, the exclusion of Nathan Oandasan's prior statement at trial, and interruptions of counsel's closing argument) rendered his trial unfair.  On August 9, 2010, the Ninth Circuit affirmed Gaitan-Ayala's conviction.  *United States v. Gaitan-Ayala*, 454 Fed. Appx. 538 (9th Cir. 2010).

On January 24, 2013, Gaitan-Ayala filed his § 2255 Motion.  Doc. Nos. 731, 738.  On January 30, 2013, the court entered an order finding that Gaitan-Ayala waived his attorney-client privilege as to the issues raised in the § 2255 Motion, as well as to communications between Gaitan-Ayala and Seitz that are reasonably related to those issues.  Doc. No. 736.  On May 29, 2012, the government filed its Opposition, Doc. No. 740, and Gaitan-Ayala filed a Reply on July 30, 2012.  Doc. No. 747.

On August 2, 2012, the court entered an Order requiring (1) an

evidentiary hearing on the limited issue of Seitz' advice regarding the plea process

and likely prison sentence upon a guilty verdict, and (2) that counsel be appointed

to Gaitan-Ayala for this limited issue.  Doc. No. 748.  An evidentiary hearing on

this limited issue was held on March 11, 2013, where Gaitan-Ayala and Seitz

testified.

### III.  <u>STANDARD OF REVIEW</u>

The court's review of Gaitan-Ayala's Motion is governed by 28

U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which
> imposed the sentence to vacate, set aside or correct the
> sentence.

A court should hold an evidentiary hearing on a § 2255 motion

"unless the files and records of the case conclusively show that the prisoner is

entitled to no relief."  28 U.S.C. § 2255(b).  "In determining whether a hearing and

findings of fact and conclusions of law are required, '[t]he standard essentially is

whether the movant has made specific factual allegations that, if true, state a claim

on which relief could be granted.'"  *United States v. Withers*, 638 F.3d 1055, 1062

(9th Cir. 2010) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).  "Thus, the district court's decision that [the petitioner's] ineffective assistance claim did not warrant an evidentiary hearing [is] correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *Schaflander*, 743 F.2d at 717).[2]  Conclusory statements in a § 2255 motion are insufficient to require a hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

## IV.  <u>DISCUSSION</u>

Gaitan-Ayala raises a laundry list of reasons why he is entitled to relief pursuant to § 2255, which can be categorized as (1) claims already raised on direct appeal; (2) claims that were raised neither at trial nor on direct appeal; (3) a claim that the court erred during sentencing by applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a); (4) a claim that new impeachment evidence regarding witness Carlos Aguilar-Alvarez warrants a new trial and/or dismissal of

---

[2]  Although an evidentiary hearing is normally required when a petitioner's allegations are based on facts outside of the record, no hearing is required when the petitioner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  Such is the case on all of Gaitan-Ayala's claims except for those asserting that Seitz provided ineffective assistance of counsel regarding plea negotiations and in advising Gaitan-Ayala regarding likely prison sentences.

the FSI against him, and (5) claims for ineffective assistance of counsel.  The court

addresses these claims in turn.

## A.    Claims Raised on Direct Appeal

Where a defendant raises an issue "on direct appeal and the previous

panel addressed it, then that decision is law of the case."  *United States v. Jingles*,

702 F.3d 494, 498 (9th Cir. 2012) (citing *In re Rainbow Magazine, Inc.*, 77 F.3d

278, 281 (9th Cir. 1996)).  "Under the 'law of the case' doctrine, a court is

ordinarily precluded from reexamining an issue previously decided by the same

court, or a higher court, in the same case."  *Id.* at 499 (quoting *Richardson v.*

*United States*, 841 F.2d 993, 996 (9th Cir. 1988)).  The law of the case doctrine

applies where the issue in question was "decided explicitly or by necessary

implication in [the] previous disposition."  *Id.* (quoting *United States v. Lummi*

*Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (alterations in original)).

So long as the issues presented "are essentially the same," the law of

the case doctrine will apply unless the movant establishes that: "(1) the decision is

clearly erroneous and its enforcement would work a manifest injustice,

(2) intervening controlling authority makes reconsideration appropriate, or

(3) substantially different evidence was adduced at a subsequent trial."  *Gonzalez v.*

*Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012), *cert. granted*, 133 S. Ct. 476 (2012)

(quotations omitted); *see also Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir.

2005) (listing additional factors as including whether other changed circumstances

exist, or a manifest injustice would otherwise result).

 The law of the case doctrine applies to two of Gaitan-Ayala's claims

-- that he was rotated through the SHU during his pretrial custody, Doc. No. 731,

Pet'n at 3, and that the government failed to timely disclose *Giglio* material such

that a new trial was required on all counts of the FSI.  *Id.* at 7.  Gaitan-Ayala raised

these same arguments on direct appeal and the Ninth Circuit rejected them -- the

Ninth Circuit (1) held that Gaitan-Ayala's rotation through the SHU was

reasonably related to the government's goal of preventing witness intimidation,[3]

*Gaitan-Ayala*, 454 Fed. Appx. at 540, and (2) affirmed the district court's

determinations that the *Giglio* material did not impact the convictions on Counts 1

and 7.  *Id.* at 539-40.  Further, Gaitan-Ayala offers no reason why the law of the

case doctrine should not apply.

 The court therefore DENIES Gaitan-Ayala's § 2255 Motion raising

claims regarding his rotation through the SHU and the government's disclosure of

*Giglio* material.

_____

 [3]  Gaitan-Ayala was one of six defendants charged in the FSI that were held at
Honolulu's Federal Detention Center.  They were held separately after one co-defendant was
allegedly pressured by another co-defendant not to change his plea, which required each co-
defendant to be held in the SHU on a rotational basis for thirty to thirty-five days at a time.

**B.    Claims That Could Have Been Raised on Appeal**

Absent a showing of cause and prejudice, a federal habeas petitioner

procedurally defaults on all claims that were not raised on direct appeal, other than

claims asserting that the petitioner was deprived of effective assistance of counsel.

*See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*,

523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

The Supreme Court has explained:

> [T]o obtain collateral relief based on trial errors to which
> no contemporaneous objection was made, a convicted
> defendant must show both (1) "cause" excusing his
> double procedural default, and (2) "actual prejudice"
> resulting from the errors of which he complains.

*Frady*, 456 U.S. at 167-68.

"'[C]ause' under the cause and prejudice test must be something

*external* to the petitioner, something that cannot fairly be attributed to him."

*Coleman v. Thompson*, 501 U.S. 722, 753 (1991).  Examples of external factors

that constitute cause include "interference by officials," or "a showing that the

factual or legal basis for a claim was not reasonably available to counsel." *Murray*

*v. Carrier*, 477 U.S. 478, 488 (1986).  To show "actual prejudice," a § 2255

petitioner "must shoulder the burden of showing, not merely that the errors at his

trial created a *possibility* of prejudice, but that they worked to his *actual* and

9

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Gaitan-Ayala raises several issues in his § 2255 Motion that he failed to raise on appeal, including that: (1) he was deprived attorney-client privacy because his attorney visits were videotaped, Doc. No. 731, Pet'n at 3; (2) the government vouched for the credibility of witness Zaneta Nixon and/or other witnesses at trial, *id.* at 4; and (3) he received an illegal sentence as to Count VII because the jury convicted him of a violation of 21 U.S.C. § 846, but the court sentenced him based on a violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), *id.* at 5.  Because Gaitan-Ayala has failed to establish cause for his default and prejudice, these claims all fail.

Specifically, all of these claims should have been reasonably available to Gaitan-Ayala's counsel such that he cannot establish that any external factor prevented him from raising these issues on appeal.  And to the extent Gaitan-Ayala argues that he failed to earlier raise these issues due to his counsel's ineffective assistance, Gaitan-Ayala has failed to establish any prejudice -- his assertions of prejudice are so vague and conclusory that he has failed to show that any of these alleged errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Frady*, 456 U.S. at 170.

And even setting aside Gaitan-Ayala's failure to carry his burden, these claims lack merit on their face.[4]  First, there is no prohibition against subjecting an inmate's legal visits to videotaping, *see* 28 C.F.R. § 543.13(e), and the government has a legitimate interest in the security of detention facilities. *Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Indeed, Gaitan-Ayala offers nothing but conclusory assertions as to how videotaping caused him any prejudice. Second, Gaitan-Ayala asserts in only the most conclusory fashion that the government improperly vouched for Zaneta Nixon, providing no explanation explaining how and/or when it occurred.  The court is not aware of any improper vouching, much less any vouching that would have affected Gaitan-Ayala's conviction.  Third, Gaitan-Ayala did not receive an illegal sentence as to Count VII.  Rather, he appears to have confused the counts in the Indictment versus the FSI -- Gaitan-Ayala was convicted and sentenced for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a) as charged in the FSI (in comparison, Count VII of the original Indictment charges a violation of 21 U.S.C. § 846).[5]

---

[4]  As a result, to the extent Gaitan-Ayala raises these claims as ineffective assistance of counsel claims, they fail for the same reasons here -- Gaitan-Ayala cannot establish the necessary prejudice for an ineffective assistance of counsel claim where the claim itself wholly lacks merit.

[5]  In his Reply, Gaitan-Ayala argues that he unaware of the renumbering of the counts because was never provided the FSI and was therefore unable to follow what was being argued at trial.  Doc. No. 747, Pet'r Reply at 4.  The court rejects this argument out of hand -- Gaitan-

(continued...)

The court therefore DENIES the § 2255 Motion on these claims.

**C.     Four-Level Leader Enhancement**

Gaitan-Ayala argues that the court erred during sentencing by

applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a), which applies

where "the defendant was an organizer or leader of a criminal activity that

involved five or more participants or was otherwise extensive."[6]  Gaitan-Ayala

argues that the jury needed to make the leader determination, and that the evidence

at trial established that John Ayala, not Gaitan-Ayala, was the leader.  The court

disagrees.

As an initial matter, the four-level enhancement is a sentencing factor

that may be determined by the court.  The district court may engage in judicial fact

finding at sentencing so long as it treats the Sentencing Guidelines as advisory and

---

[5](...continued)
Ayala was arraigned on the charges contained in the FSI on September 6, 2007.  Doc. No. 179.
Further, throughout the trial, the court and parties referred to the FSI, not the Indictment.

[6]  Although Gaitan-Ayala did not raise this issue on appeal, he made an objection during
sentencing.  An objection before the trial court may be sufficient to preserve the issue for a
§ 2255 motion, even if not raised on direct appeal.  *See United States v. Schlesinger*, 49 F.3d
483, 485 (9th Cir. 1994) ("A contemporaneous objection to the alleged error by means of a Rule
35 motion may be sufficient to preserve the issue for collateral review under § 2255.  Because
there was no such motion in this case, we need not decide that question." (citations omitted)); *see
also United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996) (stating that all
non-constitutional errors are waived unless objected to in the district court *or* on direct appeal).
Because Gaitan-Ayala's claim fails on the merits, the court need not decide whether Gaitan-
Ayala's failure to appeal this non-constitutional sentencing issue precludes him from raising this
claim in his § 2255 Motion.

the sentence does not exceed the statutory maximum. *United States v. Booker*, 543 U.S. 220, 233 (2005) ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."); *United States v. Williamson*, 439 F.3d 1125, 1140 (9th Cir. 2006) (applying *Booker*); *see also United States v. Fitch*, 659 F.3d 788, 794 (9th Cir. 2011) ("[O]nce there is a conviction, the sentencing judge is possessed of extraordinarily broad powers to find the facts that will drive the sentence."). In sentencing Gaitan-Ayala, the court treated the Sentencing Guidelines as advisory only, and did not sentence him in excess of the statutory maximum.

Turning to whether the four-level enhancement was appropriate, "a preponderance of the evidence must support a finding that the defendant was an organizer or leader, 'not merely that the defendant was more culpable than others who participated in the crime.'" *United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008) (quoting *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996)). To determine "whether a defendant was an organizer or leader, as opposed to a manager or supervisor," the court should consider the following factors:

> [T]he exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation

13

in planning or organizing the offense, the nature and
scope of the illegal activity, and the degree of control and
authority exercised over others.

*Avila*, 95 F.3d at 889-90 (quoting U.S.S.G. § 3B1.1 cmt. n.4).  Upward adjustments

have been upheld in "cases involv[ing] defendants who, the evidence showed,

exercised some degree of control or organizational authority over others."  *Rivera*,

527 F.3d at 908 (quoting *United States v. Garcia*, 497 F.3d 964, 969-70 (9th Cir.

2007) (alterations in original)).

The court rejects that there was any error in applying a four-level

enhancement pursuant to U.S.S.G. § 3B1.1(a).  At sentencing, the court explained

that ample evidence supported applying a four-level enhancement:

> Now, the government has the burden of proof by a
> preponderance of the evidence in this case as to [the]
> leadership role.
> First, I believe that the evidence has been shown
> by more than a preponderance.  It is clear to me that there
> existed a well-defined, sophisticated drug trafficking
> organization: Transporting drugs from Las Vegas to
> Honolulu and other places in Hawaii and then of course
> the money going back to Las Vegas.
> I also believe, by a preponderance [of the]
> evidence, that the government has shown that the
> defendant led that organization. . . .
> So beyond the evidence regarding the actual
> conviction underlying Count 7, that is the transaction
> involving Hector Cruz in March of '07, the government
> did present significant credible evidence at trial that the
> defendant was the leader of this drug trafficking
> organization between a period in 2005 through 2007.

14

That is, the coconspirators reported to him.

He was responsible for the shipment of drugs. Money was returned to him. And various people referred to him as the boss. People would say, Nelson Gaitan-Ayala is the boss.

Now that is conclusory, yes, but it is also very descriptive. It describes him as the person who ultimately makes the decisions within this drug trafficking organization.

Nathan Oandasan, Zaneta Nixon, and Regina Costales all testified that they sold methamphetamine at his behest and collected drug proceeds for the defendant, and that they were informed that he was, quote, the boss. Each traveled to Las Vegas with drug proceeds where the defendant met them and collected the money from the sales of methamphetamine. . . . And it only makes common sense that the person to whom the money is going is in this leadership role. . . .

Additionally, the government presented evidence that the defendant arranged to have the methamphetamine packaged in cans. And this deals with the Tufele testimony as well as the actual seized drugs that did come in cans.

Mr. Oandasan and Ms. Nixon testified that they had received methamphetamine packaged in this fashion. . . . And then in late '06 and early 2007, the defendant met with a DEA source and discussed the shipment of methamphetamine to Atlanta using sealed cans. Now that may not be part of the conspiracy in and of itself, but it is relevant evidence to the shipment of cans and the method of operation of this organization. . . .

The court considers the exercise of decision making authority, the nature of participation in the offense, the recruitment of accomplices, the claimed right to a larger share of fruits of the crime, the degree of participation and planning, and the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

> In weighing these factors, the court does find by a preponderance of the evidence that the government has proven that defendant is a leader and that there were clearly at least five participants, including John Eduardo Ayala, Hector Cruz, Oandasan, Nixon, Tufele, Costales, and Ikeda.
>
> And although the evidence shows that the defendant in my view insulated himself to a certain degree, the evidence nonetheless does show that he is a leader.

Doc. No. 740-10, Gov't Ex. J at 19-23.

Although Gaitan-Ayala disagrees with the court's reasoning, he has failed to show how this determination was not based on a preponderance of the evidence. The court therefore DENIES the § 2255 Motion to the extent arguing that the court erred in applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a).

**D.     Impeachment Evidence Regarding Carlos Aguilar-Alvarez**

Gaitan-Ayala argues that his due process rights were violated when the government failed to disclose evidence that would have assisted him in impeaching witness Carlos Aguilar-Alvarez. Doc. No. 731, Pet'n at 8. Gaitan-Ayala has failed to establish that he is entitled to relief.

As an initial matter, this claim is not a proper basis for a § 2255 Motion. The Aguilar-Alvarez impeachment evidence was discovered *after* the trial and *after* Gaitan-Ayala had already filed his appeal. Specifically, prior to trial, the

16

government disclosed that Aguilar-Alvarez, a witness who testified that Gaitan-Ayala discussed his drug business with Aguilar-Alvarez on two occasions and offered to deliver drugs, was a paid government informant and had received an S-visa and various monies during his cooperation.  At trial, Gaitan-Ayala's counsel, Eric Seitz, questioned Aguilar-Alvarez on these issues during cross-examination. *See* Doc. No. 740-5, Gov't Ex. E at 3-201-207.  On February 4, 2010 -- well over a year after the October 2008 trial -- Aguilar-Alvarez was deactivated as a paid informant because he had provided untruthful information during an unrelated investigation in December 2009.  *See also* Doc. No. 747, Pet'r Reply at 5 (admitting that the Aguilar-Alvarez impeachment evidence could not have been raised at trial or on appeal because it was not discovered until 2010).

       This newly-discovered evidence is not a proper basis of a § 2255 motion -- "short of proof of actual innocence, claims solely based on new evidence are generally not cognizable on habeas" and instead must be based upon an independent constitutional violation.  *United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (citing *Conley v. United States*, 323 F.3d 7, 14 (1st Cir. 2003) (en banc) ("Merely to claim that new evidence casts doubt, even grave doubt, on the correctness of a conviction is not a ground for relief on collateral attack.")); *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[N]ewly discovered evidence . . .

alleged in a habeas application . . . must bear upon the constitutionality of the

applicant's detention; *the existence merely of newly discovered evidence relevant*

*to the guilt of a state prisoner is not a ground for relief on federal habeas*

*corpus*.") (quotations and citations omitted).

The court recognizes, however, that it may treat Gaitan-Ayala's claim

regarding this new evidence as a motion seeking a new trial.  *See Berry*, 624 F.3d

at 1039 (explaining that where a § 2255 motion is filed within the time period

allowed for new trial motions, the § 2255 motion may be treated as a Rule 33

motion for a new trial).  To qualify for a new trial, Gaitan-Ayala must establish

that:

> (1) the evidence is newly discovered; (2) the defendant
> was diligent in seeking the evidence; (3) the evidence is
> material to the issues at trial; (4) the evidence is not
> (a) cumulative or (b) merely impeaching; and (5) the
> evidence indicates the defendant would probably be
> acquitted in a new trial.

*United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc) (citations

omitted).[7]

---

[7] Despite the element that a defendant must establish that the evidence is not "merely impeaching," such evidence may warrant a new trial under some circumstances.  Specifically, *United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992), explains that impeachment evidence may warrant a new trial where it "render[s] the witness' testimony totally incredible [and where] the witness' testimony were uncorroborated and provided the only evidence of an essential element of the government's case."

18

Treating Gaitan-Ayala's argument as a Motion for New Trial, he has failed to establish that this new evidence indicates that he would probably be acquitted in a new trial. The court is well-aware of the evidence presented at trial -- from presiding at trial, ruling on Gaitan-Ayala's previous Motion for New Trial, *see Gaitan-Ayala*, 2009 WL 901522, and reviewing the record again for Gaitan-Ayala's § 2255 Motion. Aguilar-Alvarez' testimony was simply not critical to either Count 1 or 7 of the FSI. Specifically, Count 1 of the FSI charged Gaitan-Ayala with conspiracy to possess with intent to distribute and to distribute methamphetamine, while Count 7 charged him with distribution of 50 grams or more of methamphetamine on or about March 23, 2007. As detailed in the April 2, 2009 Order Granting in Part and Denying in Part Gaitan-Ayala's earlier Motion for New Trial, these Counts were established through the testimony of Edward Tufele, Zaneta Nixon, Regina Costales, and Honolulu police officer Keane Tabanera. *Id.* at *10-12. Aguilar-Alvarez provided no testimony specific to the March 23, 2007 incident comprising Count 7, and the testimony of the other individuals provided a consistent story that Gaitan-Ayala was in charge of the drug operation sufficient for the jury to convict Gaitan-Ayala on Count 1. Indeed, the Ninth Circuit agreed with the April 2, 2009 Order's analysis that Count 1 and 7 were properly supported, which did not rely on Aguilar-Alvarez' testimony in making that

determination. *See Gaitan-Ayala*, 454 Fed. Appx. at 539.

As a result, consideration of this new impeachment evidence as to Aguilar-Alvarez does not undermine the verdict on Counts 1 and 7. The court therefore DENIES Gaitan-Ayala's Motion for a New Trial.

## E.    Ineffective Assistance of Counsel

Although not clearly articulated, it appears that Gaitan-Ayala argues that one of his counsel previous to Seitz, Myles Breiner, provided ineffective assistance of counsel by failing to disclose a conflict of interest. Gaitan-Ayala further argues that his subsequent counsel, Eric Seitz, provided ineffective assistance of counsel by failing to (1) do anything about his rotation through the SHU; (2) investigate witness Aguilar-Alvarez, (3) discuss and obtain "fast track" disposition pursuant to U.S.S.G. § 5K3.1; (4) properly handle Gaitan-Ayala's civil action against another of his previous counsel, Drago Campa; (5) advise him regarding the plea process and/or engage in plea negotiations; or (6) discuss the amount of time he faced if he proceeded to trial and obtained a guilty verdict.[8] Based on the following, the court finds that these allegations lack merit.

---

[8] In his Reply, Gaitan-Ayala also appears to argue that Seitz was ineffective by failing to timely respond to Gaitan-Ayala's letters, failing to notify him that the writ of certiori to the Supreme Court was denied, and performing work without authorization. Doc. No. 747, Pet'r Reply at 10-11. Gaitan-Ayala missed no deadlines, however, and otherwise fails to explain how Seitz' actions prejudiced him.

### *1.      Legal Standard for Ineffective Assistance of Counsel Claims*

To prevail on an ineffective assistance claim, a § 2255 movant must
show (1) that counsel's representation fell below an objective standard of
reasonableness, and (2) that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different.
*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Counsel "is strongly presumed to have rendered adequate assistance
and made all significant decisions in the exercise of reasonable professional
judgment." *Id*. at 690; *see Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990).
"[S]trategic choices made after thorough investigation of law and facts relevant to
plausible options are virtually unchallengeable; and strategic choices made after
less than complete investigation are reasonable precisely to the extent that
reasonable professional judgments support the limitations on investigation."
*Strickland*, 466 U.S. at 690-91.

Even upon showing that counsel's performance is deficient, the
petitioner must also show that the deficiency was prejudicial to the petitioner's
defense. *Id*. at 692.  Stated differently, the petitioner "must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." *Id*. at 694.  A court need not determine

whether counsel's performance was deficient before examining the prejudice

suffered by the petitioner as a result of the alleged deficiencies.  *See id.* at 697.  In

other words, any deficiency that does not result in prejudice necessarily fails.

> ### 2.    *Application*

> #### a.    *Failure to disclose conflict of interest*

Although not clear, Gaitan-Ayala appears to assert that one of his

previous attorneys provided ineffective assistance of counsel by failing to disclose

his conflict of interest and/or take action on that conflict earlier.  Doc. No. 731,

Pet'n at 5 ("Defendant was prejudiced in this ground by his defense counsel due to

the conflict of interest and by the Government using its star witness to disqualify

defendant's attorney.").

It appears that Gaitan-Ayala is referring to Myles Breiner, who was

retained by Gaitan-Ayala in December 2007, and who had previously represented

Jason Ciufo, a defendant charged in a separate case.  On January 29, 2008, the

government filed a Motion for Hearing on Conflict of Interest of Myles Breiner

based on his prior representation of two cooperating witnesses who were expected

to testify on behalf of the government.  Doc. No. 311.  In opposition, Gaitan-Ayala

argued that no conflict existed and in the event that any conflict did exist, he was

prepared to waive it to maintain Breiner as his attorney.  Doc. No. 328.  Although

then-Magistrate Judge Leslie E. Kobayashi denied the motion, on February 21,

2008, the court granted the government's appeal, disqualified Breiner from

representing Gaitan-Ayala, and rejected Gaitan-Ayala's waiver of the conflict of

interest.  Doc. No. 358.

          Given these facts, any argument that Breiner provided ineffective

assistance by failing to disclose the conflict cannot be sustained.  Contrary to any

assertion that he was unaware of the conflict, Gaitain-Ayala was prepared to waive

the conflict to keep Breiner as his counsel.  Doc. No. 355, Mot. at 1 (asserting that

"Counsel has informed [Gaitan-Ayala] of the Government's claim alleging a

potential conflict of interest, and is prepared to waive such conflict should the

Court so determine.").  And to the extent Gaitain-Ayala takes issue with the

disqualification in general, he cannot establish prejudice where he obtained new

counsel.  *See, e.g.*, *United States v. Luciano*, 158 F.3d 655, 661 (2d Cir. 1998)

(holding that counsel's conflict of interest was eliminated by new counsel who

"rigorously protected [defendant's] interests"); *United States v. Pascarella*, 84

F.3d 61, 67 (2d Cir. 1996) ("Any conflict of interest that undermined [previous

counsel's] ability properly to represent [defendant] disappeared once [counsel] no

longer represented him.  [defendant] makes no attempt to show how such a conflict

before the trial began, even if it existed, prejudiced [defendant] in the presentation

of his defense."). As a result, Gaitan-Ayala's claims regarding Breiner's

disqualification cannot support an ineffective assistance of counsel claim.

        *b.*    *Rotation through the SHU*

        It is unclear whether Gaitan-Ayala asserts that Seitz was ineffective

by failing to raise the due process violation he perceived was caused by his rotation

through the SHU. *See* Doc. No. 731, Pet'n at 3. To the extent he makes this

argument, however, it lacks merit. Seitz raised this issue in a Motion to Dismiss

the Indictment and for other Appropriate Relief, Doc. No. 443, and then on appeal

(discussed supra). That both this court and the Ninth Circuit rejected this argument

does not show that Seitz was ineffective; rather, it merely shows that he was

unsuccessful. And Gaitan-Ayala offers no explanation as to how he could have

otherwise prevailed on this claim. *Cf. Bailey v. Newland*, 263 F.3d 1022, 1027,

1033-34 (9th Cir. 2001) (concluding that appellate counsel was not ineffective

because petitioner failed to show that he would have prevailed on appeal). As a

result, Gaitan-Ayala has failed to establish that Seitz provided ineffective

assistance of counsel regarding Gaitan-Ayala's rotation through the SHU.

        *c.*    *Failure to investigate Aguilar-Alvarez*

        Gaitan-Ayala argues that Seitz failed to investigate Aguilar-Alvarez,

even though Aguilar-Alvarez was the only witness who could not be significantly

impeached and Gaitan-Ayala later learned on his own that Aguilar-Alvarez had

been deactivated as a paid informer.  Doc. No. 731, Pet'n at 8-9.  As explained

above, however, Aguilar-Alvarez was not deactivated as a paid informer until after

the trial and Gaitan-Ayala had filed his appeal.  Because the appeal was pending,

Seitz recommended to await the outcome of the appeal to determine the proper

motion to file.  Doc. No. 747-1, Pet'r Ex. 1(c).  This plan of action appears

reasonable given the timing of when they learned of the information and the

procedural posture of the action, and Gaitan-Ayala offers no explanation otherwise.

Further, even if Seitz' performance was deficient (which the court

does not find), Gaitan-Ayala has failed to establish any prejudice, *i.e.*, that this new

evidence would have resulted in a new trial and/or acquittal.  As the court

explained above, consideration of this new impeachment evidence as to Aguilar-

Alvarez does not undermine the verdict on Counts 1 and 7 such that Gaitan-Ayala

is not entitled to a new trial.  Gaitan-Ayala's ineffective assistance of counsel claim

based on Seitz' alleged to investigate Aguilar-Alvarez therefore fails.

> d.   *Failure to discuss probability of early disposition program*
> *pursuant to § 5K3.1*

Gaitan-Ayala argues that Seitz was ineffective for failing to discuss

and/or seek a "fast track" early disposition program pursuant to U.S.S.G. § 5K3.1,

which provides that "[u]pon motion of the Government, the court may depart

downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."  Fast track disposition pursuant to U.S.S.G. § 5K3.1 does not apply -- the United States Attorney for the District of Hawaii has not authorized any early disposition program.  *See* Doc. No. 731, Gov't Resp. at 33.  As a result, Seitz cannot be found ineffective for failing to pursue it.

>       e.       *Gaitan-Ayala's civil action against his previous counsel Drago Campa*

Gaitan-Ayala asserts that he "was prejudiced by never being advised by attorney and having his finances taken upon where he won a judgment against attorney that is still unsatisfied."  Doc. No. 731, Pet'n at 5.  This assertion appears to be directed to the fact that Seitz represented Gaitan-Ayala in a civil action against another of his former attorneys, Drago Campa.  In the civil action, Gaitan-Ayala obtained a default judgment against Campa, yet has not collected because they have been unable to locate Campa's assets.  *See Ayala et al. v. Contreras & Campa et al.*, Civ. No. 08-00249 SOM-LEK, Doc. No. 18 (Findings of Fact and Conclusions of Law); Doc. No. 740-9, Gov't Ex. I, Seitz Decl. ¶¶ 11-12.  This claim fails -- a § 2255 Motion is limited to challenging a criminal sentence and can afford Gaitan-Ayala no relief regarding a civil action.

> f.    Failure to engage in plea negotiations and/or advise Gaitan-
>        Ayala regarding likely sentence upon a jury verdict

Gaitan-Ayala argues that "[t]here were no times counsel ever counseled defendant about the plea process or counseled about obtaining a fair plea agreement that would have resulted in a more lenient sentence."  Doc. No. 731, Pet'n at 3.  Gaitan-Ayala further asserts that Seitz "never discussed the probability of how much time the defendant may receive by going to trial."  *Id.*  In comparison, the government presented via declaration Seitz' assertions that (1) he initiated, with Gaitan-Ayala's authorization, discussions with the government regarding a plea agreement, but that the parties were so far apart that a plea agreement never materialized; and (2) he repeatedly advised Gaitan-Ayala that if he were convicted at trial he could face a sentence in excess of twenty years to be followed by deportation.  Doc. No. 740-10, Gov't Ex. I, Seitz Decl. ¶¶ 5, 8.

The court appointed Gaitan-Ayala counsel and held an evidentiary hearing on these limited issues on March 11, 2013, at which Seitz and Gaitan-Ayala testified.  Based upon his demeanor and manner of testifying, the court finds Seitz' testimony credible and that this testimony, credited as true, establishes no basis for an ineffective assistance claim.

Specifically, Seitz testified that he met with Gaitan-Ayala at least ten to twenty times, and was in continuous contact with Gaitan-Ayala's daughter, who

also relayed information between the two.  Although Gaitan-Ayala professed to

Seitz his innocence and his desire to go to trial, he wanted to explore all

possibilities and authorized Seitz to engage in plea agreement discussions with the

government.  Seitz testified that he spoke with the government on at least three

occasions regarding the possibility of a plea deal, and in response the government

would not offer a deal -- Gaitan-Ayala wanted terms that were simply not possible

(a sentence of six to eight years, with the ability to stay in the United States

afterward), the government believed in the strength of its case, and the government

was not interested in the information Gaitan-Ayala could offer that could possibly

lead to a motion for downward departure based on substantial assistance (he could

provide information regarding individuals in Mexico, who the government could

not apprehend).[9]  As a result, Seitz neither offered nor was offered a formal plea

deal, and he informed Gaitan-Ayala of the results of these negotiations.

Seitz further testified that he explained the Sentencing Guidelines to

Gaitan-Ayala, including that a guilty plea would lower the sentencing range two to

---

[9]  In his Declaration, Seitz asserts that "[t]here was never any discussion about or offer of a government motion for a downward departure from the applicable sentencing guidelines," Doc. No. 740-10, Gov't Ex. I, Seitz Decl. ¶ 10, which arguably suggests that Seitz did not discuss with the government a motion for downward departure.  At the March 11, 2013 hearing, Seitz credibly clarified that he had no detailed discussions or negotiations with the government regarding a motion for downward departure given that the government was not interested in what Gaitan-Ayala could offer.

three levels (for acceptance of responsibility), and that Gaitan-Ayala was facing a

mandatory minimum, with the actual guideline range dependent on the amount of

drugs he was found responsible for and whether he received an aggravating role

enhancement.[10]

       Crediting this testimony as true, the court finds no basis for Gaitan-

Ayala's argument that Seitz provided ineffective assistance of counsel in not

pursuing a plea agreement and not advising Gaitan-Ayala regarding his options and

likely sentence.  Rather, the credible evidence establishes that Seitz properly

counseled Gaitan-Ayala regarding possible ways to lower his sentence (whether by

pleading guilty and/or offering assistance to the government), took reasonable

efforts in seeking a plea agreement with the government, and provided

professional, reasonable advice to Gaitan-Ayala regarding his likely sentence and

deportation if found guilty at trial.  The court therefore DENIES Gaitan-Ayala's

§ 2255 Motion asserting that Seitz provided ineffective assistance of counsel in

---

[10] In comparison, Gaitan-Ayala testified that Seitz never explained at any time prior to trial (1) the chances of a not guilty verdict at trial; (2) how proceeding to trial may affect the sentence; (3) that a guilty plea affects the sentencing range by two to three levels; (4) that the government would not agree to a downward departure; (5) the Sentencing Guidelines and the mandatory minimum sentence he was facing based on the various scenarios; or (6) that Gaitan-Ayala could be deported after serving his sentence.  Gaitan-Ayala asserts that if Seitz had explained the consequences of trial and the likely sentence ranges, Gaitan-Ayala would have never proceeded to trial.  The court finds this testimony wholly incredible.  Indeed, Gaitan-Ayala contradicted his own testimony by acknowledging that his daughter relayed to him from Seitz that the government would not offer him a plea deal.

plea negotiations and/or in advising him of his likely sentence at trial.

## V.  CERTIFICATE OF APPEALABILITY

In denying the Petition, the court must also address whether Gaitan-Ayala should be granted a certificate of appealability ("COA").  *See* R. 11 Governing § 2255 Cases in the U.S. Dist. Cts. (providing that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.")  A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"The standard for a certificate of appealability is lenient."  *Hayward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), overruled on other grounds by *Swarthout v. Cooke*, 131 S. Ct. 859 (2011).  The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further."  *Id.* (citation and internal quotation marks omitted).  The standard "requires something more than the absence of frivolity but something less than a merits determination."  *Id.* (internal quotation marks omitted).

The court carefully reviewed all of Gaitan-Ayala's assertions and gave him every benefit by liberally construing them.  Based on the above analysis, the court finds that reasonable jurists could not find the court's rulings debatable.

Accordingly, a COA is DENIED.

## VI.  <u>CONCLUSION</u>

Based on the above, the court DENIES the Petition pursuant to 28

U.S.C. § 2255 to Vacate Sentence and Set Aside for a New Sentencing, and

DENIES a certificate of appealability.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 12, 2013.



<u>/s/ J. Michael Seabright</u>
J. Michael Seabright
United States District Judge

*United States v. Gaitan-Ayala*, Civ. No. 12-00002 JMS-BMK, Cr. No. 07-00268-01 JMS, Order:
(1) Denying Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in a Federal Custody; and (2) Denying a Certificate of Appealability